## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 4122 | DATE | November 10, 2003 |
| CASE TITLE | Slamecka v Empire | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ■ Status hearing reset to 11/19/03, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss is denied with respect to counts II through VI.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 1 2 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | // |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS A. SLAMECKA and T. SLAMECKA, )
INC., )
                                                               )
                  Plaintiffs, )
                                    )     No.   03 C 4122
v. )
                                               )     Judge Robert W. Gettleman
EMPIRE KOSHER POULTRY, INC., )
J.W. CHILDS ASSOCIATES, L.P., and, )
J.W. CHILDS ASSOCIATES, INC., )
                                             )
                  Defendants. )

## MEMORANDUM OPINION AND ORDER

DOCKETED
NOV 1 2 2003

In their first amended complaint, plaintiffs Thomas Slamecka and T. Slamecka, Inc. seek damages against defendants Empire Kosher Poultry, Inc. ("Empire"), J.W. Childs Associates, L.P., and J.W. Childs Associates, Inc. for their alleged refusal to compensate plaintiffs for management consulting and investment banking services that they performed on defendants' behalf. Specifically, plaintiffs assert the following claims: (1) breach of contract (Count I); (2) quantum meruit - management consulting services (Count II); (3) quantum meruit - investment banking services (Count III); (4) promissory estoppel - management consulting services (Count IV); (5) promissory estoppel - investment banking services (Count V); and (6) breach of implied-in-fact contract (Count VI). Defendants have moved to dismiss Counts I through VI pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendants' motion to dismiss is granted with respect to Counts II through VI and denied with respect to Count I.

## FACTS

Defendant J.W. Childs Associates, L.P. ("Childs") owns all of the shares of defendant Empire. On October 11, 2002, T. Slamecka, Inc. and Childs entered into an agreement (the "Agreement") naming T. Slamecka, Inc. as Empire's "exclusive Investment Banking representative" for the purpose of assisting Empire with respect to, (1) any sale of stock in, or substantially all of the assets of Empire, (2) any merger, or (3) any other divestiture transaction with Empire (collectively, the "transaction").[1] The Agreement, which was attached to the amended complaint, further provided that T. Slamecka, Inc.,

> will implement a divestiture strategy consistent with the objectives, needs and preferences of [Empire] owners and debt holders as communicated by [Childs], or its appointed agent, and be responsible for all activities required to actively assist [Empire] through the completion of each transaction opportunity that [Empire] deems worthy of pursuit.

To this end, the Agreement anticipated that T. Slamecka, Inc. would prepare a selling memorandum, conduct a due diligence review, identify and contact potential strategic and financial parties, arrange meetings and make formal presentations to interested parties, and structure, negotiate, document and close on a sale "which is tailored to achieve the goals of [Empire's] owners and debt holders." The Agreement also stated that T. Slamecka, Inc. would provide ongoing oversight and management services and oversee negotiations with outside contractors including labor negotiations.

---

[1] Although the Agreement was entered into by the corporate plaintiff, T. Slamecka, Inc., the complaint alleges that "no corporation papers were ever filed with the Illinois Secretary of State to formerly create T. Slamecka, Inc." Defendants have not challenged the standing of the corporate plaintiff to maintain this action.

2

In consideration of these services, the Agreement provided that Empire would pay T. Slamecka, Inc. a non-refundable cash retainer fee (the "retainer fee") of $12,000 each full calendar month during the term of the Agreement. The Agreement also provided that "[i]f [Empire] or an affiliate controlled by [Empire] enter[ed] into a transaction" during the term of the Agreement, Empire would pay T. Slamecka, Inc. a cash transaction fee (the "transaction fee") equal to two percent of the transaction. Any retainer fee received by T. Slamecka, Inc. during the twelve months prior to the closing of any transaction was to be credited to the transaction fee. In accordance with its express termination provision, the Agreement terminated automatically on April 15, 2003.

Plaintiffs allege that, as a result of their efforts, no less than five entities made written offers or letters of intent to acquire Empire. In one instance, plaintiffs allege that a particular offeror was ready, willing, and able to enter into an enforceable contract to buy Empire, but that "the sellers refused to perform their end of the buyer's offer." To that end, plaintiffs attached email correspondence from Childs' agent indicating that "the current bank holders do not want to proceed with a sale of the company and will attempt to restructure the business." That email, dated March 21, 2003, was in response to an email that inquired about the status of "Mordecai Tessler's Letter of Intent."[2]

Plaintiffs received a $78,000 retainer fee for their six and a half months of work on defendants' behalf, but claim that they are entitled to additional compensation for their services. In a letter dated May 15, 2003, plaintiff demanded an additional $315,000 from defendants, which

---

[2]Defendants attached Mordecai Tessler's Letter of Intent, dated March 20, 2003, to their motion to dismiss. In response, plaintiffs submitted the affidavit of one of defendants' senior debtholders, as well as correspondence between defendants and Tessler. These materials, although arguably related to plaintiffs' claims, go far beyond the four corners of plaintiffs' complaint and are not properly considered on a Rule 12(b)(6) motion.

3

defendants refused to pay because "[n]o transaction (as that term is defined in [the Agreement]) occurred...."

In their amended complaint, plaintiffs assert the following claims: breach of express contract for which plaintiffs are entitled to $315,000 (Count I); quantum meruit - management consulting services (Count II); quantum meruit - investment banking services (Count III); (4) promissory estoppel - management consulting services (Count IV); (5) promissory estoppel - investment banking services (Count V); and (6) breach of implied-in-fact contract (Count VI).

## DISCUSSION

Defendants have moved to dismiss Counts I through VI under Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under this Rule is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts the factual allegations as true and draws all reasonable inferences favorable to plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings, which include the complaint, any exhibits attached thereto, and supporting briefs. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002). Nonetheless, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993).

1.  Breach of Express Contract

According to defendants, no transaction was consummated and thus, by the express terms of the Agreement, no commission is due. Defendants further maintain that the Agreement did not obligate them to accept an offer containing specified terms, or otherwise cede to plaintiffs the right to determine whether and how a transaction involving Empire would occur. In response, plaintiffs argue that they produced a ready, willing, and able buyer, and that they are therefore entitled to their commission, notwithstanding defendants' unwillingness to proceed with the sale.

In their briefs concerning the instant motion to dismiss, the parties appear to agree that the relationship between T. Slamecka, Inc. and Empire is that of broker and principal.[3] Under Illinois law, a broker earns his commission when he produces a purchaser who is ready, willing and able to buy on terms that are acceptable to the seller. "The commission is earned even though no enforceable contract to purchase is ever formed and no sale is consummated, if, in fact, the failure to contract or consummate is wholly attributable to the seller." John F. Fleming, Inc. v. Beutel, 395 F.2d 21, 24 (7th Cir. 1968) (citations omitted). See also Goldstein v. Rosenberg, 331 Ill. App. 374, 375 (1st Dist. 1947) (holding that seller's prevention of consummation of transaction did not relieve him of obligation to pay commission because "the seller cannot take advantage of a condition precedent the performance of which he has rendered impossible.").

---

[3] The court questions whether T. Slamecka, Inc. was in fact acting as a broker. As described by plaintiffs themselves in their opposition to the defendants' motion to dismiss, their job was "to keep Empire afloat while Childs sought to find a buyer for Empire." It is unclear from the papers submitted and the allegations of the amended complaint whether plaintiffs procured the prospective buyers, or whether they were attracted to Empire as the result of plaintiffs' services in keeping it "afloat."

5

The foregoing is consistent with Restatement (2d), Agency, § 445 (comment c), which provides:

> Although a promise by a principal is expressed to be conditional upon the execution of an enforceable contract between the principal and the customer, a principal is subject to liability if the broker procures a customer having sufficient assets, ready and willing to enter into an enforceable contract with the principal on the principal's terms, and whose failure to do so is because of the principal's refusal to execute such agreement.

Defendants argue that because they did not specify their "acceptable terms" of sale ex ante, plaintiffs are not entitled to their commission. Neither Fleming, nor Goldstein, nor the plain text of comment c, however, imposes any such requirement, and defendants have not cited any authority implying such a requirement. In A.I.C. Ltd. v. Mapco Petroleum Inc., 711 F. Supp. 1230 (D. Del. 1989), cited by defendants, the court dismissed a broker's claim for breach of a brokerage contract under which the principal "had absolutely no obligation to enter into any of the contemplated transactions." Id. at 1233. The court's conclusion that the broker was not entitled to his commission in that case was not based on the absence of "acceptable terms" in the brokerage agreement, however. Rather, the court noted that "[the agreement] provide[d], in unambiguous and painstakingly crafted language, that [the principal] had no duty whatsoever to enter into any of the contemplated underlying transactions." Id. at 1239. From that "unambiguous and painstakingly crafted language," the Mapco court concluded that the broker assumed the risk that a transaction would not be consummated, and thus could not complain that the principal's actions prevented him from earning his commission. Id.

Thus, the fact that the Agreement did not contain "acceptable terms" does not defeat plaintiffs' express contract claim, provided that the offer ultimately made to defendants was on

6

their terms. Whether the proposed buyer's terms were indeed acceptable to defendants remains to be seen; that matter is not appropriately resolved in the context of a Rule 12(b)(6) motion.

In support of their express contract claim, plaintiffs have alleged that T. Slamecka, Inc. produced a buyer ready, willing, and able to enter into an enforceable contract with defendants, and that defendants refused to execute the contract. Accepting these allegations as true, and declining to consider matters outside the pleadings, the court denies defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss Count I.

2.  Counts II, III, IV, V, and VI

In Counts II through VI, plaintiffs seek the value of their investment banking and management services under theories of quantum meruit, promissory estoppel, and breach of implied-in-fact contract. Defendants seek to dismiss these claims on the ground that the express contract between the parties prevents plaintiffs from recovering under quasi-contract theories. The court agrees.

"Quasi-contract is not a means for shifting a risk one has assumed under contract." Industrial Lift Truck Service Corp. v. Mitsubishi International Corp., 104 Ill. App. 3d 357, 361 (1st Dist. 1982). Accordingly, if the provision of services is pursuant to an express contract, there can be no quasi-contractual recovery for those same services. See Barry Mogul and Assoc., Inc. v. Terrestris Development Co., 267 Ill. App. 3d 742 (2d Dist. 1994) ("It is well established, as a general rule, that a plaintiff cannot pursue a quasi-contractual claim where there is an enforceable express contract between the parties.").

The express terms of the Agreement provide for a retainer fee of $12,000 per month in "consideration of the services to be performed by [T. Slamecka, Inc.]." The services "to be

7

performed" included management services as well as investment banking services. Accordingly, plaintiffs cannot be heard to complain that the $78,000 they received as a retainer fee is inadequate compensation for the investment banking and management consulting services performed by T. Slamecka, Inc. during the six and one half month term of the contract. This amount is precisely what plaintiffs bargained for.

The transaction fee, if any, to which plaintiffs were entitled was conditioned upon Empire entering into a transaction. Specifically, the Agreement explicitly provided that the transaction fee would be two percent of the "transaction size," which was defined as "consideration received" (past tense) for the assets or stock of the company. As noted above in the court's discussion of plaintiffs' contract claim, if defendants wrongfully prevented plaintiffs from consummating a transaction and realizing their commission, then plaintiffs may indeed be entitled to their agreed-upon transaction fee as provided for under the Agreement. Prevailing on that argument would not entitle plaintiffs to additional quasi-contractual recovery for services rendered, however. Plaintiffs' compensation for services rendered was explicitly addressed in the retainer fee provision of the Agreement.

Put simply, plaintiffs cannot avoid the terms of the retainer and transaction fees that they memorialized in a written contract, the enforceability and applicability of which has not been put into question, by pleading theories of quasi-contractual recovery. See Hartmarx Corp. v. JBA Intern., Inc., 2002 WL 406973, at *9 (N.D.Ill. March 15, 2002) (citing Conway Corp. v. Alpha Distributors, Ltd., 1992 WL 57950, at *3 (N.D.Ill. March 20, 1992)) ("[A]n implied in fact contract will not be recognized if there is an express contract between the parties concerning the same subject on which the implied contract claim rests"); Ahn v. Midway Manufacturing Co.,

8

965 F. Supp. 1134 (N.D.Ill. 1997) (claim under quantum meruit failed "because a valid, enforceable agreement existed between the parties"); <u>Wagner Excello Foods, Inc. v. Fearn Int'l, Inc.</u>, 235 Ill. App. 3d 224 (1st Dist. 1992) (internal quotations and citations omitted) ("[D]octrine [of promissory estoppel] has never been considered available when the parties have entered into a contract which is binding under contract law."). Accordingly, the court grants defendants' motion to dismiss Counts II through VI.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is denied with respect to Count I and granted with respect to Counts II through VI. The parties are directed to appear for a status report on November 19, 2003, at 9:00 a.m.

**ENTER:** **November 10, 2003**

                                                    **Robert W. Gettleman**
                                                  **United States District Judge**