## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 4122 | DATE | August 11, 2004 |
| CASE TITLE | Thomas Slamecka | v | Empire Kosher Poultry |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOJune 14, 2004CKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, counter-defendant Slamecka's motion to dismiss is granted with respect to counts II and III and denied with respect to count I.

(11) ■ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 12 2004 | 73 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | GMA | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| GDS | courtroom deputy's initials | 2004 AUG 11 PM 4:21 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS A. SLAMECKA, d/b/a T. Slamecka Inc.,

    Plaintiff,

v.

EMPIRE KOSHER POULTRY, INC., J.W. CHILDS ASSOCIATES, L.P., and J.W. CHILDS ASSOCIATES, INC.,

    Defendants.

_____

EMPIRE KOSHER POULTRY, INC., J.W. CHILDS, ASSOCIATES, L.P., and J.W. CHILDS ASSOCIATES, INC.,

    Counterplaintiffs,

v.

THOMAS A. SLAMECKA, d/b/a T. Slamecka, Inc.,

    Counterdefendant.

No. 03 C 4122

Judge Robert W. Gettleman

## MEMORANDUM OPINION AND ORDER

In their first amended counterclaim, counterplaintiffs Empire Kosher Poultry, Inc. ("Empire"), J.W. Childs Associates, L.P. ("Childs"), and J.W. Childs Associates, Inc., seek damages against counterdefendant Thomas A. Slamecka ("Slamecka") for his alleged failure to act in the interest of Empire as their exclusive investment banking representative.[1] Specifically,

---

[1] On November 10, 2004, and June 29, 2004, the court granted in part and denied in part defendants' motions to dismiss. See Slamecka v. Empire Kosher Poultry, Inc., 290 F.Supp. 2d 934 (N.D.Ill. 2003) ("Slamecka I");

(continued...)

Empire asserts the following claims: (1) breach of fiduciary duty (Count I); (2) unjust enrichment (Count II); and (3) tortious interference with prospective business advantage (Count III). Slamecka has moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, Slamecka's motion to dismiss is granted with respect to Counts II and III, and denied with respect to Count I.

## FACTS[2]

Childs owns all of the shares of Empire. In 2002 Empire was experiencing financial difficulties and many of its secured lenders, who were owed tens of millions of dollars by Empire, advocated change in Empire's operations and/or a sale of the company. The lenders proposed a review of the company's operations by an outside third party. Empire contacted Slamecka, after which he informed them that any business would need to be done with T. Slamecka Inc. (the "Corporation"), that the Corporation had a number of associates working for it, and that he would involve those associates in working on consulting or investment banking assignments. Slamecka also made a commitment to Empire, via its agent Childs, that he would not become a member of any group that would seek to purchase Empire or its assets and/or stock or take part or attempt to take part in any effort to buy Empire or be an officer of or run the company post-acquisition.

The Corporation was represented by Slamecka to be an Illinois corporation of which he was the sole shareholder. Slamecka, however, has never filed corporation papers with the Illinois

---

(...continued)
Slamecka v. Empire Kosher Poultry, Inc., 03 C 4122, 2004 WL 1470026 (N.D.Ill. Jun. 29, 2004) ("Slamecka II").
[2] The facts recited herein are those alleged in defendants' counterclaim which, for purposes of this Rule 12(b)(6) motion, the court accepts as true. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996).

2

Secretary of State to formally create the Corporation. On October 11, 2002, the Corporation and Childs entered into an agreement (the "Agreement") naming the Corporation as Empire's "exclusive Investment Banking representative" for the purpose of assisting Empire with respect to, (1) any sale of stock in, or substantially all of the assets of Empire, (2) any merger, or (3) any other divestiture transaction with Empire.

According to the Agreement, the Corporation would implement a divestiture strategy consistent with the objective, needs and preferences of Empire owners and debt holders "as communicated by J.W. Childs, or its appointed agent." Additionally, the Agreement provided that the Corporation would provide ongoing oversight and management services and oversee negotiations with outside contractors, including labor negotiations.

In consideration of these services, the Agreement provided that Empire would pay the Corporation a non-refundable cash retainer fee (the "retainer fee") of $12,000 each full calendar month during the term of the Agreement. The Agreement also provided that "[i]f [Empire] or an affiliate controlled by [Empire] enter[ed] into a transaction" during the term of the Agreement, Empire would pay the Corporation a cash transaction fee (the "transaction fee") equal to two percent of the transaction (in certain circumstances, the percentage was to be reduced to 1.5 percent). Any retainer fee received by the Corporation during the twelve months prior to the closing of any transaction was to be credited to the transaction fee. Slamecka received a $78,000 retainer fee for his six and a half months of work on Empire's behalf.

Empire alleges that Slamecka's representations and promises set forth above were false when made because: the Corporation did not exist and was never created; the Corporation never accepted or ratified the Agreement; almost every expression of interest in acquiring Empire was

3

obtained by Empire; and, Slamecka attempted to affiliate himself with one or more of the parties who expressed interest in acquiring Empire. Further, Slamecka consistently put his own personal interests ahead of Empire, including: refusing and/or ignoring interested parties which had their own broker, with whom he would have to share any brokerage and/or transaction fee; attempting to become a member of various buyers' groups; advising prospective parties on how to pressure Empire and the various lenders into acquiescing to the prospective purchasers' demands and conditions; advising one prospective purchaser, which was a major customer of Empire, to threaten to take its business elsewhere; and causing buyers' groups to insert conditions in any offer that would benefit Slamecka and the Corporation but not Empire.

According to Empire, this behavior by Slamecka was a breach of his fiduciary duty arising from his position as Empire's agent, resulting in damages of at least $78,000. Empire also alleges that it would violate the principles of justice, equity, and good conscience to allow Slamecka to retain the $78,000 retainer fee that equitably belongs to Empire. Lastly, Empire contends that Slamecka intentionally and unjustifiably interfered with Empire's reasonable expectation that a business relationship would arise between Empire and prospective purchasers.

## DISCUSSION

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts the factual allegations as true and draws all reasonable inferences favorable to the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings, which include the complaint, any exhibits attached thereto, and supporting briefs. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002). Nonetheless, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993).

The pleading requirements under Fed. R. Civ. P. 8(a)(2) necessitate only "a short and plain statement showing the plaintiff is entitled to relief, the purpose of which is to give the defendant notice of the claims and the grounds they rest upon." Thompson, 300 F.3d at 753.

1. Breach of Fiduciary Duty:

Under Illinois law, a plaintiff may recover for breach of fiduciary duty where: "(1) a fiduciary duty exists on defendant's part; (2) the defendant breached that fiduciary duty; and (3) damages proximately resulted from the breach." Pope v. Smith-Rothchild Financial Co., 03 C 3335, 2003 WL 21994023 (N.D.Ill. Aug. 21, 2003) (citation omitted).

Slamecka moves to dismiss Count I, arguing that there is no fiduciary duty arising out of the Agreement. Specifically, Slamecka argues that there is no "true" agency relationship because he did not have the authority to bind Empire. See Chemtool, Inc. v. Lubrication Technologies, Inc., 148 F.3d 742, 745-47 (7th Cir. 1998). Chemtool, however, was an appeal from a bench trial, and stated in relevant part, "The existence and scope of an agency relationship are questions of fact, to be decided by the trier of fact." Id. at 746 (internal quotation omitted). Thus, although

both parties argue at length whether Slamecka is a true "agent,"[3] the court concludes that this is an issue of fact that is more appropriately resolved in a motion for summary judgment or at trial.

Having said that, the Agreement refers to Slamecka as an "agent" and appears to assign duties to him, such as the power to broker, "structure, negotiate, and close on a sale," among others, that would tend to create a fiduciary relationship. For the purposes of this motion, the court concludes that these allegations are sufficient, and thus denies Slamecka's motion to dismiss Count I.

2.  Unjust Enrichment:

Slamecka moves to dismiss Count II, arguing that under Illinois law a claim for unjust enrichment is not available where there is an express contract between the parties. Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2003). As the court discussed in Slamecka I, 290 F. Supp. 2d at 939, and Slamecka II, 2004 WL 1470026, at *4, Empire conceded in its first motion to dismiss the complaint that an express contract exists between the parties. The Agreement is an express contract between the two parties, which precludes a claim for unjust enrichment. Indeed, Empire does not respond to Slamecka's motion to dismiss Count II, which the court hereby grants.

3.  Tortious Interference with Prospective Business Advantage:

Under Illinois law, tortious interference with prospective business advantage must include the following allegations: "(1) the plaintiff had a reasonable expectancy of a valid business

---

[3]To this end, Slamecka argues that his role was not that of a "broker." The court notes, however, that this position is wholly inconsistent with the position taken by Slamecka during the briefing of Empire's first motion to dismiss, in which Slamecka urged the court to sustain his breach of contract claim under principles governing broker-seller relationships, as articulated in Restatement 2d of Agency. See Slamecka I, 290 F. Supp. 2d at 937.

relationship with a third party; (2) the defendant knew of the prospective business relationship; (3) the defendant intentionally interfered with the prospective business relationship such that the relationship never materialized; and (4) the interference caused damage." Conseco Risk Group Mgmt. Co. v. Ahrens Fin. Sys., Inc., 00 C 5467, 2000 WL 1889637, at *5 (N.D.Ill. Dec. 27, 2000). In addition, "defendant's interference must be directed toward a third party." Douglas Theater Corp. v. Chicago Title & Trust Co., 288 Ill. App. 3d 880, 887-88 (Ill. App. 1st Dist. 1997) (citation omitted).

Slamecka moves to dismiss Count III, arguing that as a party to the subject contract, he may not be sued as a tortfeasor. Since a party may not properly be sued for tortiously interfering with his own contract, Slamecka argues a party may not properly be sued for tortiously interfering with the business expectancy allegedly created by that contract. Bass v. SMG, Inc., 328 Ill. App. 3d 492, 503 (Ill. App. 1st Dist. 2002). "Such an action is not a tort but a breach of contract. The tortfeasor must be a third party to the contractual or expectancy relationship." Id. at 504 (citation omitted). The counterclaim merely alleges that a reasonable expectancy arose out of the Agreement, which provides that Slamecka was to seek out prospective purchasers. Even if hiring a sales agent created an expectancy of a sale, the amended counterclaim does not allege that any purchase was imminent or that Slamecka's subsequent actions prevented that purchase. In any event, such conduct would merely be a breach of contract. To suggest otherwise would convert any breach of service or agent contract into a claim for tortious interference with prospective business advantage, circumventing damages limitations in those contracts. The court grants Slamecka's motion to dismiss Count III.

## CONCLUSION

For the reasons stated herein, Slamecka's motion to dismiss is granted with respect to Counts II and III, and denied with respect to Count I.

**ENTER:** August 11, 2004

Robert W. Gettleman
United States District Judge